1
2
3
4
5
6                        UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF WASHINGTON
7
8   DUSTIN G. ABRAMS,              )
                                   )   No. CV-06-0155-CI
9              Plaintiff,          )
                                   )   REPORT AND RECOMMENDATION TO
10  v.                             )   GRANT DEFENDANTS' MOTION FOR
                                   )   SUMMARY JUDGMENT AND DISMISS
11  ROBERT CHURCH, et al.,         )   ALL CLAIMS WITH PREJUDICE
                                   )
12             Defendants.         )
                                   )
13  ─────────────────────────────  )

14      Before the court on Report and Recommendation is Defendants'

15  Motion for Summary Judgment. (Ct. Rec. 56.) Plaintiff, a prisoner

16  currently incarcerated at the Washington State Penitentiary, is

17  proceeding pro se and *in forma pauperis*. Defendants are represented

18  by attorney Brian A. Christensen of Jerry J. Moberg & Associates.

19  The matter was noted for hearing without oral argument. (Ct. Rec.

20  34.) The parties have not consented to proceed before a magistrate

21  judge.

22                          **PROCEDURAL HISTORY**

23      On May 30, 2006, while housed at the Grant County Jail,

24  Plaintiff filed a civil rights Complaint in U.S. District Court

25  against named jail personnel at the Grant County Jail and the Grant

26  County Sheriff's Department. He alleged violations of his

27  constitutional rights pursuant to 42 U.S.C. § 1983. (Ct. Rec. 1.)

28  On August 11, 2006, the court dismissed the Complaint in part and

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DISMISS ALL CLAIMS WITH PREJUDICE - 1

granted leave to amend. (Ct. Rec. 11, 16.) Plaintiff filed his First Amended Complaint on September 22, 2006 (Ct. Rec. 12), and the court ordered service on October 23, 2006. (Ct. Rec. 19.) Consistent with the court's scheduling order (Ct. Rec. 34), Defendants filed the instant Motion for Summary Judgment on October 19, 2007. A "Notice to Pro Se Litigants of the Dismissal and/or Summary Judgment Rule Requirements" was sent to Plaintiff at his address of record at the Walla Walla State Penitentiary (WWSP) on January 11, 2007, and October 22, 2007. (Ct. Rec. 34 at 5; Ct. Rec. 66.) Despite receiving notice pursuant to *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998), *cert. denied*, 527 U.S. 1035 (1999), Plaintiff has not responded to the Motion.[1]   Accordingly, the facts

---

[1] LR 7.1, Local Rules for the United States District Court of the Eastern District of Washington, states that failure to respond to a motion may be considered consent by the non-moving party to entry of an adverse order. LR 7.1 (h)(5). However, the court may consider assertions in a plaintiff's complaint as evidence in opposition of a motion for summary judgment if (1) the facts asserted are based on personal knowledge, (2) they are admissible in evidence, and (3) the plaintiff has declared under penalty of perjury that the contents of the complaint are true and correct. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt,* 833 F.2d 196, 197 (9th Cir. 1987). Here, Plaintiff's Amended Complaint was filed as a complete substitute for his initial Complaint, which was dismissed with leave to amend. (Ct. Rec. 11 at 16; Ct. Rec. 16.) Plaintiff did not declare under the penalty of perjury that assertions in his Amended Complaint were true and

as presented in Defendants' Statement of Facts are admitted to exist without controversy.  LR 56.1(d).

**AMENDED COMPLAINT**

Plaintiff alleges violations of his constitutional rights under the First, Eighth and Fourteenth Amendments.  (Ct. Rec. 12.) Specifically, he claims his Eighth and Fourteenth Amendment rights were violated when:

1.   Defendants housed him in an unsanitary "crisis room" while he was a pretrial detainee from August 17, 2005, through September

---

correct.  (Ct. Rec. 12.)  Therefore, allegations contained therein are not verified pursuant to 28 U.S.C. § 1746 and do not meet the requirements set forth in *Schroeder* and *McElyea*, *supra*.  However, Plaintiff submitted a verified affidavit with his initial Complaint, (Ct. Rec. 10, Affidavit of Dustin G. Abrams), which the court has considered.  The Affidavit contains allegations similar to those in the Amended Complaint.  Although the court holds a pro se prisoner complaint to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and will not dismiss a Complaint due simply to inartful pleadings, a party opposing summary judgment must present "significant probative evidence tending to support the complaint" to defeat summary judgment.  *Anderson*, 477 U.S. at 248-49.  Plaintiff is not entitled to rely on mere allegations in his Affidavit submitted with the initial Complaint or those in the unverified Amended Complaint in opposing Defendants' motion for summary judgment.  *See, e.g.*, *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423-24 (9th Cir. 1985).

4, 2005, without running water, disciplinary hearings, fresh air, or access to recreation and television;

2.   He was required to be in handcuffs when outside of his cell while a pretrial detainee;

3.   He was moved to an administrative segregation cell in "D" dorm on September 4, 2005, without outdoor exercise, review hearings or television, while still a pretrial detainee;

4.   He was subjected to cell searches weekly from September 4, 2005, to April 21, 2006, with the intent to harass;

5.   On January 13, 2006, when moved into a new cell where pepper spray had been used, he was not allowed to clean out pepper spray residue that was irritating him until January 14;

6.   On April 22, 2006, after pepper spray was sprayed into his cell and on him, excessive force was used to handcuff him after he came out of his cell, he was not allowed to wash for 45 minutes, and he suffered prolonged exposure to pepper spray;

7.   On May 17 through May 19, 2006, he was denied visitation and his hour outside the cell, and given a diet of peanut butter sandwiches and water for seven meals as punishment for a rule violation;

8.   He was not given notice of the rule violation for which he received punishment until May 19, 2008, at 8:30 p.m. (Ct. Rec. 12, Amended Complaint at 3-13.)

Plaintiff claims a First Amendment violation due Defendants' denial of his right to practice the Jewish faith. (Ct. Rec. 12 at 14.) He further contends that the Grant County Sheriff's Department has no formal policies or procedures, and a custom of violating inmate rights. (Id. at 14.)

**UNCONTROVERTED FACTS**

Defendants contend there is no evidence of constitutional deprivation and all claims should be dismissed. In support of their Motion, they filed a Statement of Facts (SOF), which is supported by Declarations of Lieutenant Kerri Adler and Officer Robert Church, both of the Grant County Sheriff's Office, Corrections Division. (Ct. Rec. 60, 61.)   Plaintiff has not objected to, or controverted by responsive memorandum, the Defendants' SOF.   Therefore, those facts are admitted to exist without controversy. LR 56.1 (b) and (d).

Defendant Adler's Declaration includes the following documentary evidence: A memo to Plaintiff's inmate file, dated October 1, 2005; reprints of the jail's Control Room Activity Log for January 14, 2006, January 15, 2006, and April 22, 2006; a report prepared in the course of jail business dated April 23, 2006, regarding events on April 22, 2007; Plaintiff's inmate kite and Defendant Adler's response, dated May 18, 2006; and a Sanction Review report dated June 1, 2006. (Ct. Rec. 60 at 14-32.)   The uncontroverted facts are summarized as follows:

Plaintiff was transferred in the summer of 2005, from WWSP to Grant County Jail, where he was housed as a pretrial detainee awaiting trial for murder. (SOF ¶ 3; Ct. Rec. 60 at ¶¶ 2, 5.)   Jail personnel discovered he had dismantled his cell fixtures and had been digging a hole in the wall of his cell in an effort to escape. He was transferred to another cell, but caused damage to that cell also. (SOF ¶¶ 4, 5; Ct. Rec. 60 at ¶ 5.)   On August 17, 2005, he was moved to a "crisis room" for about 17 days, while the damaged cells were repaired and so Plaintiff could be monitored closely.

(SOF ¶ 2; Ct. Rec. 60 at ¶ 5.)   Plaintiff was considered an escape risk and violent offender.  (SOF ¶¶ 8, 11; Ct. Rec. 60 at ¶ 7.)

In September 2005, he was transferred to a cell in "D" dorm, which was used for administrative segregation, so jail personnel could continue to monitor him and ensure the safety of the jail population.  He was allowed visits, legal library access, bathroom and shower access, and an hour outside the cell daily for exercise. He was handcuffed when he was outside the dorm, but not during his hour outside the cell, but within the dorm.  During this time, he was not allowed access to the outdoor patio due to limited supervisory personnel and security concerns.  (SOF ¶¶ 7-9; Ct. Rec. 60 at ¶ 6.)  He was told he was not entitled to a hearing to grieve these conditions because the conditions were imposed for security reasons and he was not being punished.  (SOF ¶ 12; Ct. Rec. 60 at ¶ 7.)   Jail policy provides for daily review of inmates in administrative segregation to consider alternative placement, but because Plaintiff's behavior became worse, jail officials had no other placement alternative to preserve order and safety.   Jail policy does not allow an inmate in administrative segregation to receive recreation room or television privileges due to increased safety risk.  (SOF ¶¶ 13, 14; Ct. Rec. 60 at ¶ 7.)

Because of the damage he did to his first cell, and his attempt to dig through his wall with a homemade tool, jail personnel were instructed to physically inspect his cell on a daily basis. Inspections were videotaped.  (SOF ¶ 17; Ct. Rec. 60 at 15 and ¶ 9.) On September 6, 2005, officers found metal pieces from a pencil sharpener during an inspection.  (SOF ¶ 15; Ct. Rec. 60 at ¶ 8.)

Between September 2005 and May 2006, Plaintiff spread feces

around his cell and flooded his cell by plugging his toilet on numerous occasions, causing damage and unsafe conditions in the facility and disrupting the jail population.  He also was caught with contraband and weapons in his cell.   He was given an inmate guidebook which he flushed down the toilet.  (SOF ¶¶ 16, 19-21; Ct. Rec. 60 at ¶¶ 8, 10, 18.)

When transferred to a new cell in January 2006, Plaintiff complained it had pepper spray residue that irritated him.  The cell had been cleaned and occupied by another inmate before Plaintiff was moved in, and there had been no complaints about spray residue. Plaintiff was allowed to get cleaning supplies during his hour out, but failed to retrieve the cleaning supplies during the designated time.  Plaintiff was not allowed to obtain cleaning supplies during lunch time because jail policy does not allow inmates outside of their cells except at designated times due to supervisory manpower limitations.  (SOF ¶¶ 22, 25; Ct. Rec. 60 at ¶¶ 11, 12.)  Plaintiff did not seek medical treatment for pepper spray exposure. (SOF ¶ 23, 26; Ct. Rec. 60 at ¶¶ 11-13.)

On April 22, 2006, Plaintiff created a flood in his cell; when jail personnel arrived, he refused to leave the cell and prevented the officers' entry into his cell by jamming the door shut. Plaintiff splashed urine on Defendant Church, while Officer Knutson was trying to communicate with Plaintiff through the crack in the door.  Plaintiff also threatened to throw feces on anyone who came in the cell.  (SOF ¶¶ 27, 28; Ct. Rec. 61 at ¶ 3.)  The officers sprayed pepper spray under the door jam and gained entry.  Once Plaintiff was removed from the cell, Plaintiff would not comply with orders to get on his knees and allow handcuffing. (SOF ¶ 29; Ct.

Rec. 60 at ¶14.)   Officer Knutson physically subdued Plaintiff by putting his knee in Plaintiff's back and pressed him to the ground without struggle for handcuffing.  (*Id.*; Ct. Rec. 61 at ¶ 5.)

After the incident, Plaintiff was taken to a cell where the water was turned off as a precaution against more floods.  After about forty minutes, the flooded cell was cleaned, Plaintiff was returned to the cell and allowed to shower.  Plaintiff exhibited no injuries and required no medical treatment after the incident.  (SOF ¶¶ 31, 32; Ct. Rec. 60 at 24-25 and ¶¶ 14, 15; Ct. Rec. 61 at ¶ 6.)

On May 17, 2006, while he was a post-conviction inmate, Plaintiff started another flood in his cell during a jail riot.  He was given a major rule violation sanction of two days visitation, loss of his hour out for two days, and a disciplinary diet of peanut butter sandwiches for two days.  (SOF ¶¶ 35-37; Ct. Rec. 60 at 32 and ¶ 17.)   Defendant Adler provided notice of the violation to Plaintiff a couple of days after the incident.  Notice was delayed due to the responsible officer's having gone on leave without delivering the notice.  (SOF ¶ 37; Ct. Rec. 60 at ¶ 17.)  Plaintiff grieved the sanctions and a review hearing was held on May 26, 2006. (Ct. Rec. 60 at 32.)

Jail personnel found a homemade knife in Plaintiff's cell three days after the incident during a routine search.  (SOF ¶ 38; Ct. Rec. 60 at ¶ 18.)

Plaintiff first informed jail personnel that he was an orthodox Jew on or about May 18, 2006.  He did not make religious demands prior to that date.  He did not indicate religious preference in booking documents and had not professed or practiced the Jewish faith while incarcerated at the WWSP.  (SOF ¶ 33; Ct. Rec. 60 at ¶

16.)  Plaintiff did not observe Jewish holidays while housed at the Grant County Jail.  (SOF ¶ 34; Ct. Rec. 60 at 30 and ¶ 10.)  After checking with WWSP officials and reviewing Plaintiff's booking documents, Defendant Adler notified Plaintiff that his claims of being Jewish were not credible. (*Id.*)

Grant County Jail policies and procedures are provided to each inmate and posted on the walls.  (SOF ¶ 39; Ct. Rec. 60 at ¶ 19.)  Plaintiff went through the grievance and appeals process numerous times while housed at the Grant County Jail, including review of the May 17, 2006, sanctions.  (*Id.;* Ct. Rec. 60 at 30-32.)

## SUMMARY JUDGMENT

FED. R. CIV. P. 56(c) states a party is entitled to summary judgment in its favor, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The party opposing the motion must present facts in evidentiary form and cannot merely rest on the pleadings.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Genuine issues are not raised by mere conclusory or speculative allegations.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).  The court will examine the direct and circumstantial proof offered by the non-

moving party and the permissible inferences which may be drawn from such evidence.  A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also, Triton Energy Corp v. Square D. Company*, 68 F.3d 1216 (9th Cir. 1995).

Finally, the Supreme Court has ruled that FED. R. CIV. P. 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.  The question on summary judgment, then, is "whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.  Where there is no evidence on which a jury could reasonably find for the non-moving party, summary judgment is appropriate.  *Id.* at 252.

### 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) the violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Leer v. Murphy*, 844 F.2d 628, 632-33

(9th Cir. 1988).  A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  To hold a defendant liable for damages, the wrongdoer must personally cause the violation.  *Leer*, 844 F.2d at 633.  There is no *respondeat superior* liability.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Thus, a supervisor is liable under § 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it."  *Id*. If damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation.  *Leer*, 844 F.2d at 634.  Here, there is no issue to whether Defendants were acting under color of state law; the only question is whether Defendants' acts were unconstitutional.

### EIGHTH AMENDMENT CLAIMS

Plaintiff claims his Eighth Amendment rights were violated because his cell was unsanitary, he had no running water, he was denied fresh air, exercise, television, and he was subjected to handcuffing while outside his cell and during regular cell searches. He also asserts his post-conviction disciplinary diet of peanut butter sandwiches and restrictions on visitation and time outside his cell rise to the level of cruel and unusual punishment.  (Ct. Rec. 12.)

Although a pretrial challenge to conditions of confinement is evaluated under the Fourteenth Amendment and a post-conviction challenge to the conditions of confinement is evaluated under the

Eighth Amendment, *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir. 1991) (en Banc), *cert. denied*, 502 U.S. 1074 (1992), the Eighth Amendment provides a minimum standard of care for determining a person's right as a pretrial detainee. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979); *Jones. v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986).[2]   To defeat summary judgment under traditional Eighth Amendment standards using in Fourteenth Amendment claims by a pretrial detainee, an inmate must show that he was deprived of "minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).   An inmate also must show that the responsible prison official acted with "deliberate indifference to a substantial risk of serious harm." *Frost*, 152 F.3d at 1128 (*citing Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

It is undisputed that Plaintiff was moved to Grant County Jail as a pretrial detainee; however, the record does not clearly indicate when Plaintiff's status changed to prisoner.   The majority of complained of conditions of confinement appear to have been imposed during administrative segregation, both while Plaintiff was a pretrial detainee and as a prisoner; thus the conditions of confinement are analyzed here under Eighth Amendment standards.[3]   The

---

[2]   The Ninth Circuit has held that because "a pretrial detainees' rights under the Fourteenth Amendment Due Process Clause, are comparable to a prisoner's rights under the Eighth Amendment," the same standards are applied. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

[3]   Plaintiff's claims regarding conditions while a pretrial detainee under the more protective Fourteenth Amendment standards

disciplinary diet and complained of restrictions on visits and time out imposed after the May 17, 2006, incident were imposed as punishment. (Ct. Rec. 60 at 32.)

**A.   Conditions of Confinement**

Prisoners claiming Eighth Amendment violations based on conditions of confinement are required to satisfy both an objective and subjective component to the claim. *Hudson v. McMillian,* 503 U.S. 1, 5-6 (1992). Under the subjective component, a prisoner must demonstrate that prison officials were deliberately indifferent to the allegedly unconstitutional prison conditions. *Wilson,* 501 U.S. at 302-304.

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer,* 511 U.S. at 837.

The objective component of an Eighth Amendment claim is "contextual." *Hudson,* 503 U.S. at 5-6. "Extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 7. "A number of unrelated conditions, each of which satisfy eighth amendment requirements, cannot in combination amount to an eighth amendment violation." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987). However, related conditions may be combined in determining whether there is a constitutional violation. In *Wilson v. Seiter*, the Supreme Court held that:

---

are discussed *infra* at 19-21.

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISS ALL CLAIMS WITH PREJUDICE - 13

> Some conditions of confinement may establish an eighth
> amendment violation "in combination" when each would not
> do so alone, but only when they have a mutually enforcing
> effect that produces the deprivation of a single,
> identifiable human need such as food, warmth, or exercise-
> -for example, a low cell temperature at night combined
> with a failure to issue blankets.

501 U.S. at 304. Under this "contextual" approach, conditions that might be deemed cruel and unusual if they were permanent features of a prisoner's life may not offend the Constitution if they are imposed only temporarily. "A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 696-87 (1978).

Nonetheless, it is well-settled that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley v. Albers*, 475 U.S. 312, 321-322 (1986) (*quoting Bell v. Wolfish*, 441 U.S. 520, 547 (1979)). This "wide ranging deference" is extended in situations where there is an actual confrontation, such as a jail riot, as well as in the imposition of preventative measures intended to reduce the potential for confrontation. *Id*.

Here, uncontroverted facts indicate Plaintiff was both an escape risk and violent offender. He was placed in the "crisis room," for 17 days because there were no housing alternatives available after he damaged two cells and flooded his cell and adjoining parts of the jail. Running water was turned off temporarily while repairs were made to avoid further flooding. (SOF ¶¶ 2, 7, 30; Ct. Rec. 60 at ¶¶ 4, 5, 6, 15.) While in administrative segregation, he was allowed access to showers,

bathroom visits and had one hour outside the cell each day for exercise in his dorm. He was handcuffed only when he was outside his dorm and was not allowed to the outside patio for security reasons. (SOF ¶¶ 7, 8; Ct. Rec. 60 at 6). The uncontroverted evidence shows Defendants's actions did not demonstrate "deliberate indifference" to Plaintiff's basic needs.

After Plaintiff's attempt to escape by digging through his cell wall, his cell was inspected routinely for damage, contraband and weapons. Only "calculated harassment unrelated to prison needs," implicates Eighth Amendment protection. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). There is no evidence that the searches were "calculated harassment." It is undisputed that after the searches were instituted, Defendants found a homemade knife in his papers on one occasion and pieces of metal during another routine inspection. The uncontroverted evidence establishes that the routine cell searches were related to the prison official's need to maintain security.

Regarding Plaintiff's allegations he was denied cleaning supplies to clean out pepper-spray residue that was irritating him in one of his cells, undisputed facts establish that on January 13, 2006, Plaintiff was moved to a cell where pepper spray had been used, and that the cell had been cleaned and occupied by another inmate without complaint for two days prior to Plaintiff's placement. On January 14, 2006, Plaintiff was offered medical attention, but failed to cooperate. He failed to access cleaning supplies during the scheduled time. (SOF ¶ 22-26.) The jail officials, by offering cleaning supplies and medical attention, did not exhibit deliberate indifference to Plaintiff's complaints.

Further, there is no evidence that exposure to the pepper spray was prolonged or that Plaintiff suffered excessive harm as a result of the exposure.  Plaintiff only alleges denial of cleaning supplies on one occasion.

Based on the evidence presented, the Defendants' actions do not approach a denial of "the minimal civilized measure of life's necessities," in combination or alone, and do not implicate Eighth Amendment rights.  *Hutto*, 437 U.S. 678, 696-87 (1978).

**B.  Disciplinary Diet and Suspension of Visits/Hour Out**

It is undisputed that Plaintiff was fed peanut butter sandwiches as punishment for two days.  (SOF ¶¶ 35-37; Ct. Rec. 60 at 32 and ¶ 17.)  "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing."  *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993); *see also Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *LeMaire,* 12 F.3d at 1456 (citation and internal quotations omitted).  As mentioned above, the Supreme Court observed that a diet of "grue," a tasteless food concoction which provided only 1000 calories a day, "might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto*, 437 U.S. at 686-87. Plaintiff's diet of peanut butter sandwiches was given for only two days and without consequences to Plaintiff's health; therefore, it does not rise to the level of an Eighth Amendment violation.

The denial of prison access to a visitor is well within the restrictions contemplated by a prison sentence. *See Kentucky Dept.*

*of Corrections v. Thompson*, 490 U.S. at 460-61.  Even if a change in conditions of confinement has a substantial adverse impact on a prisoner, it does not necessarily invoke constitutional protection where there is no showing of deliberate indifference to medical needs caused by the deprivation.  *See, e.g., May,* 109 F.3d 557, 565-66 (9th Cir. 1997).  Here, there is no evidence in the record that the two-day restrictions on Plaintiff's visits and hour outside his cell had harmful impact on Plaintiff.  They were neither extreme nor of significant duration and do not rise to the level of cruel and unusual punishment.  *Hudson*, 503 U.S. 8-9.

**C.   Excessive Force**

Plaintiff also claims Defendants violated his Eighth Amendment rights when they pepper sprayed his cell and used excessive force to subdue him for handcuffing.  An Eighth Amendment violation arising from the use of force occurs only when a prison official applies force "maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.  Serious injury is one factor to consider, but is not required if the use of force was "wanton and unnecessary."  *Id*.  To determine whether the use of force was wanton and unnecessary, relevant factors include: "the extent of injury suffered [,] . . . the need for application of force, the relationship between that need and the amount of force used, the threat [to the safety of staff and inmates] 'reasonably perceived by the responsible officials,' and 'any efforts to temper the severity of a forceful response.'"  *Id.* (*quoting Whitley*, 475 U.S. at 321).

There is no Eighth Amendment violation if "force was applied in a good-faith effort to maintain or restore discipline."  *Id*.  As stated above, the courts accord wide-ranging deference to prison

administrators in the exercise of policies and practices that in their judgment are needed to preserve internal security, safety and discipline. *Whitley*, 475 U.S. at 322-23. The infliction of pain in the course of implementing prison security measures does not amount to cruel and unusual punishment even though it may appear, in hindsight, the degree of force was unreasonable. *Id.* at 319. An allegation of cruel and unusual punishment should proceed to trial only if the evidence supports a reliable inference the prison official intended to inflict pain. *Id.* at 322.

Here, Defendants' use of pepper spray was neither wanton nor unnecessary. Rather, the uncontroverted facts indicate Defendants were reacting to a situation created by Plaintiff, who threatened officers attempting to get him out of his cell after he had flooded it and jammed the cell door shut during a jail riot. He threw urine at an officer who was trying to talk to him through the crack in the door. He had threatened to throw feces. Plaintiff's own refusal to open his cell led to the use of pepper-spray; and then it was sprayed through a crack in the door. There is no probative evidence that Plaintiff was sprayed directly.

It is undisputed that after Plaintiff left the cell, he was subdued by jail officials and put on the ground after he resisted efforts to handcuff him. It also is undisputed that Defendant used physical force to subdue Plaintiff and pressed him to the ground for handcuffing. The evidence viewed in a light most favorable to Plaintiff indicates that force used was reasonable and was not intended to harm Plaintiff; rather, it was used to "preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 322-23 (*quoting Bell*, 441 U.S. at

547).  There are no facts in evidence that Defendants actions could have caused extreme risk to Plaintiff's health or safety or that Plaintiff was injured or required medical treatment as a result of the incident.  (SOF ¶ 32.)

In sum, the undisputed facts viewed in the light most favorable to Plaintiff indicate that Plaintiff's conditions of confinement were not sufficiently serious to rise to the level of a constitutional deprivation.  There is no evidence to support an inference of deliberate indifference, or malicious or sadistic intent; and there is no evidence of injury to Plaintiff.  The undisputed facts establish that Defendants were dealing with a volatile situation, created in part by Plaintiff, in which the safety and security of the facility were at risk.  Under these circumstances, "wide-ranging deference" to prison official's judgment is extended.  *Whitley,* 475 U.S. at 322.  The evidence does not support a "reliable inference of wantonness" necessary to raise an issue of material fact, and Defendants should be granted summary judgment on all Eighth Amendment claims as a matter of law.

**DUE PROCESS CLAIMS (PRETRIAL AND POST-CONVICTION)**

**A.   Pretrial Administrative Segregation**

It is undisputed Plaintiff was a pretrial detainee during some of his time at the Grant County Jail.  When an individual is detained on a criminal charge, that individual, unlike a post-conviction prisoner, "may not be punished prior to an adjudication of guilt in accordance with due process of law."  *Bell*, 441 U.S. at 535; *see also Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004), *cert. denied*, 545 U.S. 1139 (2005) ("[T]he Fourteenth Amendment prohibits all punishment of pretrial detainees").

A pretrial detainee who is placed in disciplinary segregation as punishment has a right to a due process hearing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). However, administrative segregation differs from disciplinary segregation: "Absent a showing of an express intent to punish on the part of detention facility officials, . . . if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441 U.S. at 538-39. Thus, this court must distinguish whether the facts here raise a material question of fact as to whether Plaintiff's transfer and placement in segregation involved legitimate penological objectives or the imposition of punishment.

Here, uncontroverted facts establish that during his time at Grant County Jail (pretrial and post conviction), Plaintiff was extremely disruptive to the administration of the jail and posed a serious threat to the safety of jail personnel and inmates. Uncontroverted facts establish that as early as August 2005, Plaintiff attempted to escape and repeatedly damaged his cell, threatened jail personnel and posed a risk to the other inmates. (SOF ¶¶ 20, 21, 27-29; Ct. Rec. 60 at ¶¶ 10, 14, 17-18; Ct. Rec. 61.) There is no evidence of expressed intent by Defendants to punish Plaintiff by placing him the crisis room and administrative segregation cell. Rather, the evidence shows Plaintiff had rendered his own cells uninhabitable by flooding his toilet, smearing feces and digging a hole in the cell wall; he demonstrated repeatedly that he would continue to damage and disrupt the jail facility and possess contraband. (Ct. Rec. 60 ¶ 5-7.) There is no issue of

material fact raised by the evidence; rather it establishes that the Plaintiff's placement in the crisis room and later in "D" dorm, and the restrictions imposed on him while a pretrial detainee were rationally connected to the Defendants' need to preserve order and jail safety. *Demery*, 378 F.3d at 1028.

Because, under the uncontroverted facts, restrictions on Plaintiff's liberty were imposed reasonably to maintain "internal order and discipline" within the jail, and not as punishment for a crime or violation of jail rules, no due process hearing was required. *Bell*, 441 U.S. at 538-39.

**B.    Post Conviction Punishment**

On May 17, 2006, Plaintiff caused a flood in his cell and the entire jail dorm during a jail riot. (Ct. Rec. 60 ¶ 17.) As punishment, he received a two-day suspension of visitation, a two-day disciplinary diet and a two-day suspension of his hour out. (SOF 35-37.) There is no protected liberty interest in visitation such that a prisoner's due process rights could be violated when his visitation privileges are temporarily suspended. *See Thompson*, 490 U.S. at 460. Further, to implicate due process protection, a deprivation must "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "A temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." *May v. Baldwin,* 109 F.3d 557, 565 (9th Cir. 1997). Similarly, a two-day diet of peanut butter, with no medical effect, does not present a significant deprivation that would implicate Fourteenth Amendment protection.

Defendants concede that written notice of the rule infraction

was not given until a couple of days after the May 16, 2006, incident. (Ct. Rec. 60 at ¶ 17.) Plaintiff was given the opportunity to grieve the infraction, which he did; after a hearing on May 26, 2006, a written decision was rendered upholding the sanctions. (Ct. Rec. 60 at 32.) Plaintiff alleges the delay in written notice violated his due process rights; however a two-day delay, with no serious injury or harm resulting, does not implicate due process protection. *See, e.g., Bostic v. Carlson*, 884 F.2d 1267, 1274 (9th Cir. 1989) (short delay in disciplinary proceedings alone does not constitute a denial of due process).

**C.    Jail Policies and Procedures**

Plaintiff makes the allegation that Grant County Jail has no policies and procedures. However the record evidence indicates Plaintiff went through a grievance process on several occasions. Plaintiff has failed to controvert Defendant Adler's statement, that each inmate is given a copy of jail policies and procedures, that the policies and procedures also are posted on the jail walls, and Plaintiff flushed his handbook down the toilet. (Ct. Rec. 60 at ¶ 8.) Plaintiff's sweeping allegation without specific facts to establish injury is insufficient to defeat summary judgment. *Lujan*, 497 U.S. at 889.

There is no evidence of due process violations and Defendants are entitled to summary judgment on all Fourteenth Amendment claims as a matter of law.

### FIRST AMENDMENT CLAIM

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.

Only beliefs which are both "sincerely held" and "religious in nature" are protected under the First Amendment. *DeHart v. Horn*, 227 F.3d 47, 52 (3rd Cir. 2000).  To show a free exercise burden that is unconstitutional, a litigant must do more than merely show the government action in some way affected his religion, *e.g., Lyng v. Northwest Indian Cemetery Protective Ass'n.*, 485 U.S. 439 (1988). A plaintiff must prove the governmental act burdens the adherent's practice of his religion by pressuring him (1) to commit an act forbidden by the religion, or (2) by preventing him from engaging in conduct or having a religious experience which the faith mandates. *Graham v. C.I.R.*, 822 F.2d 844, 850-51 (9th Cir. 1987), *aff'd sub nom. Hernandez v. C.I.R.*, 490 U.S. 680 (1989).  The interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine. *Id.*  Further, "[i]t is appropriate for prison authorities to deny a special diet if an inmate is not sincere in his religious beliefs." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  Even where a religious belief is sincerely held, a prisoner's free exercise rights are not violated where the prisoner is not deprived of all forms of religious exercise and can freely observe other religious obligations. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 342 (1987); *Turner v. Safley*, 482 U.S. 78, 90 (1987); *see, e.g., Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (the denial of a kosher diet does not violate an inmate's First Amendment rights to free exercise where other forms of religious exercise are available).

Here, the undisputed facts establish that Plaintiff did not profess to be of the Jewish faith until about May 18, 2006, about

eight months after his transfer to Grant County Jail, when he filed a grievance that he was being denied kosher meals. (Ct. Rec. 60 at 30.) The evidence indicates Plaintiff did not practice the religion or observe Jewish holidays before or after his May 18 complaint. (Ct. Rec. 60 at ¶ 16.)

Defendants reasonably denied Plaintiff's requests for kosher meals after reviewing booking reports, contacting WWSP and finding no evidence of past religious preference, affiliation, or activities. *McElyea*, 833 F.2d at 198. Plaintiff's mere allegation that he is Jewish does not create an issue of fact; further, he does not controvert the evidence that he had not been observed practicing the Jewish religion while at Grant County Jail or WWSP. (SOF ¶ 33, 34; Ct. Rec. 60 at ¶ 16.) Finally, even if he were Jewish, the jail official's denial of a kosher diet alone does not arise to the level of a First Amendment violation where there is no admissible evidence that other forms of religious exercise were denied. *See, e.g., O'Lone*, 482 U.S. at 351-52; *Ward v. Walsh*, 1 F.3d 873 (9th Cir. 1993).

## CONCLUSION

Because Plaintiff has failed to respond to Defendants' Motion, the facts presented by Defendants are uncontroverted and accepted as true. Plaintiff's allegations unsupported by probative evidence are insufficient to preclude the granting of summary judgment. Viewing the evidence in the light most favorable to him, Plaintiff's claims do not rise to the level of constitutional deprivation. The evidence presents no issue of material fact, and there is no evidence before the court on which a jury could reasonably find for Plaintiff. Because there is no evidence of the violation of

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISS ALL CLAIMS WITH PREJUDICE - 24

constitutional rights by Defendants, the issue of municipal liability is not addressed. Accordingly, **IT IS RECOMMENDED** Defendants' Motion for Summary Judgment be **GRANTED** and all claims against all Defendants be dismissed with prejudice.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying any the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to FED. R. CIV. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 73; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report

REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISS ALL CLAIMS WITH PREJUDICE - 25

and Recommendation and provide copies to Plaintiff and counsel for Defendants and the referring district judge.

DATED January 24, 2008.


                        S/ CYNTHIA IMBROGNO
                   UNITED STATES MAGISTRATE JUDGE


REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISS ALL CLAIMS WITH PREJUDICE - 26